**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN COURTHOUSE**

| | |
|---|---|
| Leonard Brockington, individually and on behalf of all others similarly situated, | 1:22-cv-06666 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Dollar General Corporation, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Dollar General Corporation ("Defendant") manufactures, labels, markets, and sells crackers purporting to be made predominantly with whole grain graham flour and sweetened primarily with honey under its Clover Valley brand ("Product").



2.     Relevant front label representations include "Honey Graham Crackers," a dripping honey dipper, "Made with Real Honey" and "Contains 8g of whole grain per serving."

3.     The labeling gives consumers the impression the Product contains whole grain graham flour and honey as its primary grain and sweetening ingredient instead of enriched flour and sugar.

## I.     REPRESENTATION WITH NAME OF WHOLE GRAIN FLOUR IS MISLEADING

4.     Consumers increasingly prefer whole grains to non-whole grains because they are nutritionally superior.

5.     Whole grains include the entire grain, consisting of the endosperm, bran, and germ.

6.     The bran and germ contain important nutrients like fiber, vitamins, minerals, and antioxidants, such as iron, zinc, folate, magnesium, thiamin, niacin, selenium, riboflavin, manganese, copper, vitamin A, and vitamin B6.

7.     In contrast, "non-whole grains" or "refined grains" have been processed to remove the bran and germ, removing the fiber and most other nutrients.

8.     Most refined grains are enriched, which adds back some of the previously removed iron and B vitamins, such as thiamin, riboflavin, niacin, and folic acid.

9.     Other nutrients, including fiber, vitamin E, vitamin B6, vitamin K, magnesium, manganese, potassium, phosphorus, copper, calcium, and selenium, are not added back.

10.    Where flour is made of refined grains which only contains the endosperm, it is white in color ("white flour").

11.    A recent study in the Public Health Nutrition journal showed that the most significant information considered by consumers in trying to consume more whole grains was the front label.

12.    Studies and reports show that when product names use terms like "graham," "honey

wheat," "stone ground," "harvest," "whole milled," "multigrain" and/or "hearty wheat," between 30% to 50% of participants believed such foods have more whole grains than they do.

13.    The Food and Drug Administration ("FDA"), Federal Trade Commission ("FTC") and non-profit group, the Center for the Science in Public Interest ("CSPI") have warned companies about their misleading whole grain product names, like "HiHo Deluxe WHOLE WHEAT Crackers," "Krispy WHOLE WHEAT Saltine Crackers," and those which incorporate specific whole grain flours.

14.    One of these flours is "Graham flour, [which is] an alternative name for whole wheat flour."

15.    The Product's name, "Graham Crackers," emphasis on "Graham," pictures of dark-colored crackers and statement it "Contains 8g of whole grain per serving" gives reasonable consumers the impression that whole grain graham flour is the predominant flour used.

16.    Dictionaries confirm this commonly held belief, defining a "graham cracker" as "a slightly sweet cracker made of whole wheat flour" and "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour."[1]

17.    The whole grain content distinguishes a graham cracker from other crackers and cookies made with mostly enriched flour, also referred to as "white flour" or "refined flour."

18.    However, the ingredient list in small print on the side of the box reveals "Enriched Flour" is the predominant flour, listed ahead of "Graham Flour (Whole Wheat Flour)."

---

[1] https://www.dictionary.com/browse/graham-cracker

**INGREDIENTS:** ==ENRICHED FLOUR== (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), ==GRAHAM FLOUR (WHOLE WHEAT FLOUR)==, SUGAR, HIGH OLEIC CANOLA AND/OR SOYBEAN OIL WITH TBHQ AND CITRIC ACID FOR FRESHNESS, HONEY, CONTAINS 2% OR LESS OF: LEAVENING (BAKING SODA, CALCIUM PHOSPHATE), SALT, NATURAL FLAVOR, SOY LECITHIN, SODIUM SULFITE.

## II.   FRONT LABEL CLAIM OF 8G WHOLE GRAINS MISLEADING

19.   The 2015-2020 Dietary Guidelines for Americans recommend that at least half of all grains eaten be whole grains.

20.   The FTC and FDA recognized that "[m]any reasonable consumers will likely understand 'whole grain' [claims] to mean that all, or virtually all, of the food product is whole grain, or that all of the grain ingredients in the product are whole grains."[2]

21.   The Product's front label contains a seal which states, "Contains 8g of whole grain per serving" above "USDA recommends 48g or more of whole grain daily."



22.   The Whole Grains Council, a respected non-profit group, stated that foods which

---

[2] In the Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements, Docket No. 2006-0066 Comments of the Staff of the Bureau of Consumer Protection, the Bureau of Economics, and the Office of Policy Planning of the Federal Trade Commission April 18, 2006.

contain 8g whole grains per serving should be allowed to make such factual statements as long as they do not use terms which refer to whole grains in their names.

23.    By highlighting the 8g of whole grains and using a whole grain ingredient, "Graham" in its name, consumers will expect the Product is primarily made with whole grains.

24.    However, these representations are misleading because the Product's grains are predominantly non-whole grain.

25.    Consumers have no way to determine the proportion of whole grain graham flour to refined enriched flour based on the disclosure of 8g whole grains.

26.    Consumers are unable to know what percentage of the weight of the serving size of the Product is attributable to grain content compared to the Product's other ingredients.

27.    Without knowing how many grams of refined grains are in the Product, consumers cannot determine whether half their grains are whole, which is what the USDA and Dietary Guidelines recommend.

28.    The result is consumers will unknowingly consume more of the Product to get more whole grains, even though they will end up consuming excess refined grains.

## III.    HONEY MISREPRESENTED AS MAIN SWEETENER

29.    According to the National Institutes of Health ("NIH"), there is a direct link between excess sugar consumption and obesity.[3]

30.    Doctors and nutritionists agree that excess sugar intake leads to weight gain, Type 2 diabetes, dental caries, metabolic syndrome, heart disease, cancer, and even dementia.[4]

31.    One food industry insider stated that "[consumer] demand for sugar reduction [cuts]

---

[3] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.
[4] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.

across food and beverage categories."

32.   Speakers at the International Sweetener conference affirmed that "sugar avoidance was a macro trend 'that is here to stay and will only increase.'"

33.   Surveys by Information Resources, Inc. ("IRI") show that 58% of consumers are avoiding sugar, and over 80% are doing so for reasons related to health and weight issues.[5]

34.   In place of sugar, consumers are increasingly seeking foods sweetened with honey.

35.   This is confirmed by data obtained from the USDA, showing that the volume of honey has almost doubled in the past 35 years, from 339 million to 603 million pounds.[6]

36.   For the first time in history in 2020, honey surpassed white sugar as America's number one sweetener.

37.   At least 50% of consumers are willing to pay more for foods primarily sweetened with honey.

38.   Roughly 60% of consumers look for references to honey on a front label when deciding what to buy.

39.   There are several reasons why consumers seek foods sweetened primarily with honey or contain honey as a significant sweetening ingredient.

40.   First, almost three-quarters of consumers rate honey as "better-for-you" than sugar.

41.   Second, 93% of consumers recognize that honey is a natural sweetener, because unlike sugar, it is not heavily refined through harsh unnatural processes.

42.   According to the director of the National Honey Board, "Honey fits perfectly with consumers' desire to know where their food comes from and their preference for foods that are

---

[5] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.
[6] USDA/ERS.

unprocessed," because it "is made by bees from the nectar of flowers."

43.     Third, honey has a lower glycemic index than sugar, causing slower fluctuations in blood sugar and insulin levels.

44.     Refined sugars lead to rapid spikes of blood sugar, with quick spurts of energy followed by sharp declines, characterized by tiredness, headaches, and difficulties in concentrating.

45.     Fourth, honey is sweeter than sugar, so less of it is needed to achieve the same level of sweetness.

46.     Fifth, unlike sugar, honey has small but significant amounts of nutrients such as vitamins, minerals, enzymes, phytonutrients and antioxidants.[7]

47.     These benefits promote immunity and aid digestion.

48.     The representations of the dripping honey dipper and statement that the Product is "Made with Real Honey" convey that honey is the primary and/or significant sweetening ingredient.

49.     However, the ingredient list reveals that "Sugar" is the predominant sweetening agent and "Honey" is least predominant.

> **INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR,
> NIACIN, REDUCED IRON, THIAMIN MONONITRATE,
> RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR
> (WHOLE WHEAT FLOUR), SUGAR, HIGH OLEIC
> CANOLA AND/OR SOYBEAN OIL WITH TBHQ AND
> CITRIC ACID FOR FRESHNESS, HONEY, CONTAINS
> 2% OR LESS OF: LEAVENING (BAKING SODA,

---

[7] Brian Kennell, Healthy Food Trends Drive New Products, HuffingtonPost.com, October 1, 2015, updated December 6, 2017.

CALCIUM PHOSPHATE), SALT, NATURAL FLAVOR,
SOY LECITHIN, SODIUM SULFITE.

50.    Laboratory analysis and/or review of the Nutrition Facts and ingredient list indicates the amount of honey is slightly above 2%, which is consistent with its placement ahead of "Contains 2% or Less Of:" on the ingredient list.

51.    Though the Product contains honey purportedly for sweetening, its most significant function is to impart a darker color.

52.    This is because studies show that consumers seeking whole grain products look for foods which are darker brown, which reflects the use of bran in whole grains.

53.    According to scholar W.K. Nip, the presence of "mostly reducing sugars in [honey's] sugar profile" causes it "[to] brown[s] easily during baking, adding a natural dark color to baked products such as bread, crackers, and other products."[8]

54.    The small amount of honey contributes to consumers getting the misleading impression that the Product contains more whole grain graham flour than it does.

## IV.   CONCLUSION

55.    The Product name of Honey Graham Crackers is misleading by identifying whole grain graham flour and honey yet failing to disclose more predominant ingredients like refined flour and sugar.

56.    Crackers that have graham flour and honey as their predominant grain and sweetening ingredients exist in the marketplace and are not technologically or otherwise unfeasible to produce.

---

[8] W.K. Nip et al., eds. Bakery products: science and technology, Ch. 7, "Sweeteners," John Wiley & Sons, 2006.

57.    Reasonable consumers expect crackers identified by the names of specific grain and sweetening ingredients will contain more of those ingredients than if labeled "Crackers."

58.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

59.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

60.    Plaintiff paid more for the Product based on the representations, and had he known the truth, he would not have bought it or would have paid less.

61.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $2.00 per box, excluding tax and sales, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

62.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

63.    The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

64.    The number of purchasers of the Product during the statutory period exceed 100, because the Product has been sold at thousands of locations (and online) in the States covered by the classes Plaintiff seeks to represent, with the representations challenged here, for several years.

65.    Plaintiff Leonard Brockington is a citizen of New York.

66.    Defendant Dollar General Corporation is a Tennessee corporation with a principal place of business in Goodlettsville, Davidson County, Tennessee.

67.    Plaintiff and Defendant are citizens of different states.

68.    Venue is in this District because Plaintiff resides in this District and the actions giving rise to the claims occurred within this District, including Plaintiff's purchase, consumption and exposure to the Product's labeling and awareness of these issues.

Parties

69.    Plaintiff Leonard Brockington is a citizen of Bronx, New York, Bronx County.

70.    Defendant Dollar General Corporation, is a Tennessee corporation with a principal place of business in Goodlettsville, Tennessee, Davidson County.

71.    Defendant is an American chain of variety stores with over 17,000 stores in the continental United States.

72.    Founded as a family-owned dry goods emporium, the company rapidly expanded in rural and underserved areas.

73.    Defendant has grown to become one of the most profitable stores in country, with revenue nearing $27 billion in 2019.

74.    Where "dollar stores" previously contained items of substandard quality, Dollar General's economies of scale and ability to quickly adapt to changing consumer demand have allowed it to thrive by offering higher quality goods.

75.    While Dollar General sells leading national brands, it also sells a large number of products under one of its private label brands, Clover Valley.

76.    Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

77.    Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

78. Private label products generate higher profits because national brands spend significantly more on marketing, contributing to their higher prices.

79. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

80. Products under the Clover Valley brand have an industry-wide reputation for quality and value.

81. In releasing products under the Clover Valley brand, the foremost criteria is to have high-quality products that were equal to or better than the national brands.

82. Dollar General gets national brands to produce its private label items due to its loyal customer base and tough negotiating.

83. That Clover Valley-branded products met this high bar was proven by focus groups, which rated them above their name brand equivalents.

84. Plaintiff bought the Product on multiple occasions within the statute of limitations for each cause of action alleged, at Dollar General stores, including Dollar General, 1312 Southern Blvd, Bronx, NY 10459, between January 12, 2019, and January 12, 2022.

85. Plaintiff believed and expected whole grain graham flour and honey were the Product's primary flour and sweetening ingredient instead of enriched flour and sugar, because that is what the representations and omissions on the front label said and implied.

86. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

87.    Plaintiff is part of the over 50% of consumers who seek to consume more whole grains and less sugar for reasons including attention to their health, nutrition and wellness.

88.    Plaintiff is part of the over 50% of consumers who is willing to pay, and does pay, more for foods containing a predominant amount of whole grain ingredients and that are primarily or exclusively sweetened with honey or contain honey as a significant sweetening ingredient.

89.    Plaintiff bought the Product at or exceeding the above-referenced price.

90.    Plaintiff relied on the front label representations identified here.

91.    Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

92.    Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

93.    The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

<u>Class Allegations</u>

94.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

>   **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged.

>   **Consumer Fraud Multi-State Class:** All persons in the States of Alaska, Maine, Utah and Georgia who purchased the Product during the statutes of limitations for each cause of action alleged.

95.    Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

96.    Plaintiff's claims and basis for relief are typical to other members because all were

subjected to the same unfair and deceptive representations and actions.

97.   Plaintiff is an adequate representative because his interests do not conflict with other members.

98.   No individual inquiry is necessary since the focus is only on Defendant's practices and the classes are definable and ascertainable.

99.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

100.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law §§ 349 and 350</u>

<u>(Consumer Protection Statute)</u>

101.  Plaintiff incorporates by reference all preceding paragraphs.

102.  Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

103.  Plaintiff relied on the representations and omissions to believe the Product contained whole grain graham flour and honey as its primary flour and sweetening ingredient instead of enriched flour and sugar.

104.  Plaintiff paid more for the Product based on these representations, and he would not have purchased it or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

105.  The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or

deceptive business practices in the conduct of commerce.

106. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

107. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

108. As a result of Defendant's artifice, and unfair or deceptive acts, the Consumer Fraud Multi-State Class sustained damages in the same way as Plaintiff.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

109. The Product was manufactured, identified, distributed, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained whole grain graham flour and honey as its primary grain and sweetening ingredient instead of enriched flour and sugar.

110. Defendant directly marketed the Product to Plaintiff through advertisements and marketing in various forms of media including print circulars, direct mail, targeted digital advertising, and/or on the packaging.

111. Defendant knew product attributes that potential customers like Plaintiff were seeking, such as a predominant amount of whole grains and use of honey as a predominant or significant sweetening ingredient, and developed its marketing and labeling to directly meet those needs and desires.

112. Defendant was aware of consumer demand for whole grains and honey compared to refined grains and sugar.

113. Defendant's representations were conveyed in writing and promised the Product

would be defect-free, and Plaintiff understood this meant it contained whole grain graham flour and honey as the primary flour and sweetening ingredient instead of enriched flour and sugar.

114.   Defendant's representations affirmed and promised that the Product contained whole grain graham flour and honey as the primary flour and sweetening ingredient instead of enriched flour and sugar.

115.   Defendant described the Product so Plaintiff believed it contained whole grain graham flour and honey as the primary flour and sweetening ingredient instead of enriched flour and sugar, which became part of the basis of the bargain that it would conform to its affirmations and promises.

116.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

117.   This duty is based on Defendant's outsized role in this market, a trusted company, known for its high-quality private label products, honestly marketed to consumers.

118.   Plaintiff recently became aware of Defendant's breach of the Product's warranties.

119.   Plaintiff provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the express and implied warranties associated with the Product.

120.   Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

121.   The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

122.   The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the

promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained predominant amounts of whole grains and honey relative to refined grains and sugar.

123.   The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it contained predominant amounts of whole grains and honey relative to refined grains and sugar, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

124.   Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

125.   Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained a predominant amount of whole grain flour and honey relative to enriched flour and sugar.

126.   Defendant possesses specialized knowledge regarding the relative amounts of whole grain and honey compared to refined grains and sugar in the Product.

127.   The records Defendant is required to maintain provided it with actual and/or constructive knowledge of the falsity and/or inaccuracy of the representations.

<u>Unjust Enrichment</u>

128.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff, who seeks restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

    **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the Classes;

2. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims, and restitution and disgorgement;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   August 5, 2022

                                      Respectfully submitted,

                                      Sheehan & Associates, P.C.
                                      /s/Spencer Sheehan
                                      60 Cuttermill Rd Ste 412
                                      Great Neck NY 11021
                                      Tel: (516) 268-7080
                                      spencer@spencersheehan.com