UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                       :

LEONARD BROCKINGTON,              :

                  Plaintiff,         :

                                   :          1:22-cv-06666 (LJL)

       -v-                              :

                                   :       <u>OPINION AND ORDER</u>

DOLLAR GENERAL CORPORATION,      :

                  Defendant.      :

----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Plaintiff Leonard Brockington ("Plaintiff" or "Brockington") brings this action against

Dollar General Corporation ("Dollar General" or "Defendant") alleging violations of the New

York General Business Law ("GBL") §§ 349 and 350; violations of the consumer fraud statutes

of Alaska, Georgia, Maine, and Utah; breaches of the express warranty and the implied warranty

of merchantability; violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

("MMWA"); and common-law claims of fraud and unjust enrichment. Dkt. No. 1

("Complaint").

       Defendant moves, pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), for

dismissal of the Complaint on the ground that it fails to state a claim upon which relief can be

granted. Dkt. No. 15.

       For the following reasons, the motion to dismiss is granted in part and denied in part.

**BACKGROUND**

       The Court accepts the well-pleaded facts of the Complaint as true for purposes of this

motion.

Between 2019 and 2022, Plaintiff purchased Honey Graham Crackers (the "Product"), a cracker manufactured, labeled, and sold by Defendant, on multiple occasions from Dollar General stores in New York, including one located at 1312 Southern Boulevard, Bronx, NY 10459.  Dkt. No. 1 ¶¶ 1, 84.  The Product is described on its label as "Honey Graham Crackers," and "Made with Real Honey" and contains a depiction of a honey dipper with honey flowing from it.  *Id.* ¶ 2.  The Product's front label contains a seal that states, "Contains 8g of whole grain per serving" above another statement that the "USDA recommends 48g or more of whole grain daily."  *Id.* ¶ 21.  The front of the label is depicted below:



*Id.* ¶ 1.  The Product was released under one of Dollar General's private label brands, Clover Valley.  *Id.* ¶ 75.  Products bearing the Clover Valley brand have an industry-wide reputation for quality and value.  *Id.* ¶ 80.

Graham flour is an alternative name for whole wheat flour.  *Id.* ¶ 14.  Whole grains, such as graham flour, include the entire grain, consisting of the endosperm, bran, and germ.  *Id.* ¶ 5. The bran and germ contain important nutrients like fiber, vitamins, minerals, and antioxidants, such as iron, zinc, folate, magnesium, thiamin, niacin, selenium, riboflavin, manganese, copper, vitamin A, and vitamin B6.  *Id.* ¶ 6.  "Non-whole grains" or "refined grains" have been processed to remove the bran and germ and appear white in color.  *Id.* ¶¶ 7, 10.  When a refined grain is enriched, some, but not all, of the previously removed nutrients are added back.  *Id.* ¶¶ 8–9.  Where flour is made of refined grains which only contain the endosperm, it is white in color.  *Id.* ¶ 10.  Consumers increasingly prefer whole grains to non-whole grains because they are nutritionally superior.  *Id.* ¶ 4.  The 2015-2020 Dietary Guidelines for Americans recommend that at least half of all grains eaten be whole grain.  *Id.* ¶ 19.  The whole grain content distinguishes a graham cracker from other crackers and cookies made with mostly enriched flour, also referred to as "white flour" or "refined flour."  *Id.* ¶ 17.  However, the Product's ingredient list identifies enriched flour as the Product's predominant flour, ahead of "Graham Flour (Whole Wheat Flour)."  *Id.* ¶ 18.

The Federal Trade Commission ("FTC") and Food and Drug Administration ("FDA") have recognized that "[m]any reasonable consumers will likely understand 'whole grain' [claims] to mean that all, or virtually all, of the food product is whole grain, or that all of the grain ingredients in the product are whole grains."  *Id.* ¶ 20.  The FTC, FDA, and a non-profit group have warned companies about misleading consumers by incorporating "whole wheat" and specific whole grain flours in product names.  *Id.* ¶ 13.

As noted, the Product's label describes the Product and emphasizes the fact that it contains honey, through the Product's name, "Honey Graham Cracker," the statement that it is

"Made with Real Honey," and the picture of a honey dipper with honey dripping from it. *Id.* ¶¶ 2, 49. The Complaint alleges that in place of sugar, consumers are increasingly seeking foods sweetened with honey. *Id.* ¶ 34. According to the National Institute of Health, there is a direct link between sugar consumption and obesity. *Id.* ¶ 29. Doctors and nutritionists agree that excess sugar intake leads to weight gain, Type 2 diabetes, dental caries, metabolic syndrome, heart disease, cancer, and dementia. *Id.* ¶ 30. Consumers seek foods primarily sweetened with honey or that contain honey as a significant sweetening ingredient because most recognize it is a natural sweetener and, unlike sugar, it is not heavily refined through a harsh unnatural process; it has a lower glycemic index than sugar, causing slower fluctuations in blood sugar and insulin levels; it is sweeter than sugar, so less is needed to achieve the same level of sweetness; and, unlike sugar, honey has small but significant amounts of nutrients. *Id.* ¶¶ 39, 41, 43, 45–46. These benefits promote immunity and aid digestion. *Id.* ¶ 47. Roughly 60% of consumers look for references to honey on a front label when deciding what to buy and at least 50% of consumers are willing to pay more for foods primarily sweetened with honey. *Id.* ¶¶ 37–38. Honey also imparts a darker color to baked products, such as bread and crackers. *Id.* ¶ 53. This is because honey contains mostly reducing sugars, which causes it to brown during baking. *Id.*

Notwithstanding the message conveyed by the Product's label, the ingredient list reveals that "sugar" is the predominant sweeting agent in the Product and "honey" is the least predominant. *Id.* ¶ 49. Laboratory analysis and/or review of the Nutrition Facts and ingredient list indicates the amount of honey is slightly above 2%, which is consistent with its placement ahead of "Contains 2% or Less Of" on the ingredient list. *Id.* ¶ 50.

Plaintiff alleges that the Product's labeling gives consumers the impression that the Product contains whole grain graham flour and honey as its primary grain and sweeting

ingredient, respectively, instead of enriched flour and sugar. *Id.* ¶ 3. Plaintiff claims that the Product's labeling is misleading because it identifies whole grain flour and honey yet fails to disclose more predominant ingredients like refined flour and sugar. *Id.* ¶ 55. Plaintiff alleges that reasonable consumers expect that crackers identified by the names of specific grain and sweetening ingredients will contain more of those ingredients than if labeled "Crackers," and that, had Plaintiff known the truth, he would not have bought the Product, or else would not have been willing to pay as much for it. *Id.* ¶¶ 57, 60. Plaintiff also alleges that the value of the Product that Plaintiff purchased was materially less than the value represented by Defendant and that Defendant sold more of the Product than it would have in the absence of its misconduct. *Id.* ¶¶ 58–59. Plaintiff also alleges that the Product is sold at a price higher than similar products represented in a non-misleading way. *Id.* ¶ 61. Plaintiff bases this claim partially on his own knowledge, and partially on market research studies showing that consumers highly value products that contain a predominant amount of whole-grain ingredients and that are primarily or exclusively sweetened with honey or contain honey as a significant sweetening ingredient. *Id.* ¶¶ 88–93. Plaintiff also claims that Defendant was aware of consumer demand for whole grains and honey compared to refined grains and sugar and intended that members of the multi-state class would rely on its deceptive conduct. *Id.* ¶¶ 107, 112. Finally, Plaintiff claims to have provided notice to Defendant, its agents, representatives, retailers, and their employees that it breached the express and implied warranties associated with the Product. *Id.* ¶ 119.

Plaintiff seeks certification of a New York class and a multi-state class under Federal Rule of Civil Procedure Rule 23 to pursue this litigation; compensatory, statutory, and punitive damages; restitution and disgorgement; and costs and expenses including attorneys' fees. *Id.* at 17.

## PROCEDURAL HISTORY

Plaintiff filed a class action complaint on August 5, 2022, naming Dollar General Corporation as the sole Defendant.  *See id.*  On December 12, 2022, Defendant filed its motion to dismiss and supporting documentation.  Dkt. Nos. 15–17.  On December 28, 2022, Plaintiff filed a memorandum of law in opposition to the motion to dismiss, Dkt. No. 18, and on January 9, 2023, Defendant replied, Dkt. No. 19.

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  Although the court must accept all the factual allegations of a complaint as true, it is not "bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support their claims."  *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235–36 (1974)).

A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

6

common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

Defendant moves to dismiss each of Plaintiff's claims, specifically (i) the GBL §§ 349 and 350 claims; (ii) the state consumer fraud claims on behalf of the consumer fraud multi-state class; (iii) the breaches of express warranty, implied warranty of merchantability, and the MMWA claims; and (iv) the common-law claims for fraud and unjust enrichment.  Dkt. No. 15.

Defendant makes several arguments for why the Complaint fails to state a claim for relief.  First, Defendant argues that Plaintiff's claims are expressly preempted under the Federal Food, Drug and Cosmetic Act ("FDCA").  Dkt. No. 16 at 5.  Second, Defendant argues that the Complaint fails to state a claim under Sections 349 and 350 because Plaintiff failed to plausibly allege that the Product's label is deceptive to reasonable consumers.  *Id.* at 9.  In addition, Defendant argues that the GBL claims fail because Plaintiff has not plausibly alleged that he paid a price premium, *id.* at 22; that the warranty claims fail because Plaintiff did not provide sufficient notice, *id.* at 23; that the fraud claim fails because Plaintiff has not alleged facts showing that Defendant acted with the requisite intent, *id.*; that Plaintiff's unjust enrichment claim is duplicative, *id.* at 24; and that the multi-state claims fail for procedural reasons and failure to allege that Plaintiff purchased the Product in any state but New York, *id.*

The Court addresses each of these arguments in turn.

## I.      Federal Labeling Requirements and Preemption

Defendant argues that Plaintiff's claims are expressly preempted by the FDCA and its regulations governing the labeling of food.  Dkt. No. 16 at 4–5.  Defendant contends that the

Product complies with federal labeling requirements by using the food's common or usual name and uses words and images describing the product's characterizing flavor. *Id.* at 6, 8. Plaintiff argues that his claims are not preempted because establishing a common or usual name requires evidence beyond pleadings and the Product's honey flavor fails to trigger preemption. Dkt. No. 18 at 7–8. The Court concludes that Defendant has not, at this stage of the litigation, carried its burden of demonstrating that Plaintiff's claims are preempted.

The labeling of food sold in interstate commerce in the United States is regulated by the FDA under the FDCA, as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"). *See* 21 U.S.C. § 343, *et seq.* The evident purpose of the legislation is to establish uniform national standards for food labeling, in the interest of manufacturers and of consumers. *See N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2009) ("The NLEA sought 'to clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods.'" (quoting H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337)); *see also Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) ("It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide. Manufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy."). The Court first addresses whether Plaintiff's claims with respect to Defendant's use of the name "graham crackers" are preempted by the FDCA and then addresses whether the references on the label of the Product to "honey" are preempted.

### A. "Graham Crackers" Representation

The FDCA prohibits the "misbranding" of food in interstate commerce. 21 U.S.C. § 331. The FDCA gives the FDA authority to "promulgate regulations fixing and establishing for any

food, under its common or usual name so far as practicable, a reasonable definition and standard of identity." *Id.* § 341.  The FDCA identifies twenty-three grounds for which a good "shall be deemed misbranded." *Id.* § 343.  One of those provisions states that a product will be deemed to be misbranded if "its labeling is false or misleading in a material respect." *Id.* § 343(a)(1). Another provision states that if the food purports to be or is represented to be a food for which a definition or standard of identity has been prescribed by FDA regulations, the product will be deemed misbranded "unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food." *Id.* § 343(g).  Further, a product is mislabeled where there is no definition and standard of identity if the label does not bear "the common or usual name of the food, if any there be."  21 U.S.C. § 343(i)(1).

The FDCA also contains an express preemption clause that prohibits state and local governments from imposing requirements for food labeling that differ from applicable federal labeling laws.  That section of the FDCA, which appears under the heading of "National uniform nutrition labeling," provides that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—(1) any requirement for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity . . . [or] (3) any requirement for the labeling of food of the type required by section . . . 343(i)(1) . . . of this title that is not identical to the requirement of such section." *Id.* § 343-1(a)(1), (3).  A state thus may not prohibit a manufacturer "directly or indirectly" from doing what federal law commands, including from labeling its product with the standard of identity required by federal

law or, where there is no standard of identity, with labeling the product with its "common or usual name." *See Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 276 (S.D.N.Y. 2021) ("[A]ny state requirement 'of the [same] type' as the requirement that the good be labeled with the 'common or usual name' is preempted to the extent it requires something different." (alteration in original) (citation omitted)).  The FDA regulations promulgated under the FDCA require that all food labels "bear as one of its principal features a statement of identity of the commodity."  21 C.F.R. § 101.3(a).  The "statement of identity" must be the name "specified in or required by any applicable Federal law or regulation," or, if there is no such name, the "common or usual name of the food."  *Id.* § 101.3(b)(1)–(2).  In the absence of a common or usual name, the food package must bear an "appropriately descriptive term, or when the nature of the food is obvious, a fanciful name commonly used by the public for such food."  *Id.* § 101.3(b)(3).

There is no standard of identity for graham crackers.  Accordingly, if such product has a common or usual name, its packaging must bear that name.  Defendant claims that "common or usual name" for a product such as the Product, which is a "flat, rectangular, perforated, sweet, crunchy cracker," is "graham crackers."  Dkt. No. 16 at 5–6.  Defendant claims that products, with the features of the Product, have been sold under the name "graham crackers" for decades. *Id.*  Another court in this District has considered arguments identical to Defendant's argument and has rejected them.  *See Valcarcel*, 577 F. Supp. 3d at 277.  Its reasoning is persuasive. Federal preemption is an affirmative defense.  *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 251 n.2 (2011) (Sotomayor, J. dissenting) ("Federal preemption is an affirmative defense upon which the defendant bears the burden of proof." (citations omitted)); 2 Moore's Federal Practice–Civil § 8.08 (2023) (noting that "federal preemption" is one of the "[a]ffirmative defenses and

avoidances other than those specifically referenced in Rule 8(c)," which names the statute of limitations and res judicata as an "avoidance or affirmative defense," *see* Fed. R. Civ. P. 8(c)(1)). In that respect, it is no different from other affirmative defenses, such as statute of limitations and res judicata, that must be proven and that, if proven, establish an absolute defense to a claim of liability. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 (2003) (noting that preemption provides a "complete federal defense"). "At the pleading stage, preemption constitutes grounds for dismissal only 'if the statute's barrier to suit is evident from the face of the complaint.'" *K.D. Hercules, Inc. v. Laborers Local 78 of Laborers' Int'l Union of N. Am.*, 2021 WL 1614369, at *2 (S.D.N.Y. April 26, 2021) (quoting *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015)); *see also McKenna v. Wright*, 386 F. 3d 432, 436 (2d Cir. 2004) ("[T]he facts supporting the defense [on a Rule 12(b)(6) motion must] appear on the face of the complaint."). As a result, cases where claims have been deemed to be preempted on grounds that the defendant has branded a product with its "common or usual" name are few and far between. *See* Dkt. No. 16 at 7 (identifying four out-of-Circuit cases that finding preemption based on defendant's use of a "common or usual name"). This case is not one of them. "[W]hile it may be possible in some cases to ascertain how a term is commonly used on a motion to dismiss, [Defendant's] argument [that the name graham cracker references 'a flat, rectangular, perforated, sweet, crunchy cracker'] invites the Court to define a 'graham cracker' in terms of its shape and taste on the basis of what would essentially be speculation." *Valcarcel*, 577 F. Supp. 3d at 277; *see also Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 283–84 (S.D.N.Y. 2022) (agreeing with the *Valcarcel* court's reasoning). This the Court cannot do based on the Complaint alone. Defendant further argues that Plaintiff has not alleged what the common or usual name of the Product would be if it were not "Graham Crackers." Dkt. No. 19 at 2–3. It is

not Plaintiff's burden, however, to plead facts showing that his claim is not preempted.  Rather, it will be up to Defendant—in discovery and presumably on summary judgment—to show that products with the features of the Product are commonly and usually called "graham crackers" and that the characteristics of the Product do not deviate materially from the genus of graham cracker products.

### B.    "Honey" Representations

Defendant also argues that Plaintiff's challenge to the Product's labelling with respect to honey is preempted.  Dkt. No. 16 at 16 ("FDA regulations expressly permit food manufacturers to declare a food's flavor on its label.").  Section 343(k) of the FDCA states that "a food shall be misbranded . . . [i]f it bears or contains any artificial flavoring . . . unless it bears labeling stating that fact."  21 U.S.C. § 343(k).  The FDA has promulgated regulations under this section addressing representations of "primary recognizable flavors."  *See generally* 21 C.F.R. § 101.22(i).  These regulations address situations where "the label, labelling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients."  21 C.F.R. § 101.22(i).  If the "food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor," the name of the food "shall be accompanied by the common or usual name of the characterizing flavor, e.g. 'vanilla.'"  *Id*. § 101.22(i)(1).  In contrast, "[i]f the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor . . . and the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored' . . . , e.g., 'artificial vanilla', 'artificially flavored

strawberry', or 'grape artificially flavored.'" *Id.* § 101.22(i)(2).  Section 343(k) falls within the express preemption clause of the FDCA.  *See* 21 U.S.C. § 343-1(a)(3) ("[N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by section . . . 343(k) of this title that is not identical to the requirement of such section.").

Defendant argues that "honey is the 'characterizing flavor' of the Product," and that "the 'Honey' flavor name and honey graphic therefore are expressly permitted."  Dkt. No. 16 at 8.  It reasons that the GBL §§ 349 and 350 claims are preempted insofar as they seek to regulate the references to "honey" as a flavor on its Honey Graham Crackers' label.  *See id.*  Plaintiff counters that because it only alleges that the references to honey as a *sweetening agent* are misleading, preemption under § 343(k), which regulates *flavors*, does not apply.  Dkt. No. 18 at 8.  The Court concludes that the FDCA does not entirely preempt Plaintiff's claims.

If Plaintiff's claim were limited to Defendant's use of the honey flavor name and the honey graphic, it likely would be preempted.  "A fundamental principle of the Constitution is that Congress has the power to preempt state law."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).  State law is preempted where a statute provides "an express provision for preemption," and, *inter alia*, "to the extent of any conflict with a federal statute."  *Id.*  The Supreme Court has indicated that it "will find preemption where it is impossible for a private party to comply with both state and federal law, and where 'under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Id.* at 372–373 (alterations in original and internal citations omitted) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

As noted, the purpose of the NLEA was to create a uniform standard for food labeling. *See supra* p. 8. That purpose is articulated in the express preemption clause of 21 U.S.C. § 343-1, which applies to statements about a food's flavor. The regulations governing food flavors are not permissive; they are obligatory. They establish specific rules for the labeling of food flavors that manufacturers must follow in order for their products not to be considered "misbranded." Thus, Plaintiff's argument that his claims are not preempted simply because a reasonable consumer might also interpret the use of the term "honey" as a statement about an ingredient must fail. If the Product is characterized by a honey flavor—which it indisputably is—then Defendant was required to "declare" that fact. 21 C.F.R. § 101.22(i). A state cannot, by statute or common law, prohibit Defendant from doing what federal law requires. If a plaintiff could attack a representation about a food's flavor by claiming that it was only questioning the representation insofar as it reflected the product's ingredients, those attacks would undermine the statutory scheme enacted by Congress and the regulations promulgated by the FDA. The uniformity of food labeling with respect to flavor representations would yield to labels tailored to head off challenges under the consumer protection statutes of individual states. *See Lima v. Post Consumer Brands, LLC*, 2019 WL 3802885, at *5 (D. Mass. Aug. 13, 2019) (concluding that if the "use of the word 'honey' and the associated imagery reflects that honey is a primary recognizable flavor as well as an ingredient, then the FDA regulations clearly permit the use of the word 'honey' and the associated imagery" and preemption would apply).

This conclusion is reinforced by the flavoring regulations, which prescribe rules for foods that are "commonly expected to contain a characterizing food ingredient, e.g., strawberries in 'strawberry shortcake.'" 21 C.F.R. § 101.22(i)(1)(i). For such foods, if "the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient

insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word 'natural' and shall be immediately followed by the word 'flavored' . . . , e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake.'" *Id.*  A company cannot market a pie that contains only the miniscule amount of apple necessary to provide flavor and does not otherwise contain apple filling as "apple pie" without violating the federal regulation.  Apple pies are commonly expected to contain the characterizing food ingredient of apples.  A pie with ersatz apples thus must bear a name such as "natural apple flavored pie" or "apple flavored pie" and cannot convey the impression that it is characterized by apple ingredients.

That the regulations provide specific instructions for dual flavor-ingredient representations where a food is expected to have a "characterizing food ingredient," however, also suggests by negative implication that when the food does not contain a characterizing food ingredient, it need not use the qualifying language "natural" or "flavored."  Plaintiff makes no argument that graham crackers, because they are graham crackers, are commonly expected to contain honey.  A company is thus permitted by federal regulation to sell a graham cracker that has a natural honey flavor as a "honey graham cracker" without adding the qualifying language, such as "honey flavored."[1]  Plaintiff's argument reaches too far.

Plaintiff's claims with respect to honey are not preempted for a reason other than that primarily argued by Plaintiff.  As discussed, the Product's label contains three representations related to honey: the first two are the Product's name, "Honey Graham Cracker," and the picture of a honey dipper with honey dripping from it, but the third is the gratuitous statement that the

---

[1] Because the regulation applies to "representations . . . [made by] vignette, e.g., depiction of a fruit," 21 C.F.R. § 101.22(i), the same reasoning likely applies to the picture of the honey dipper with honey dripping from it.

Product is "Made with Real Honey." Dkt. No. 1 ¶¶ 2, 49. Defendant only argues that Plaintiff's

claims are preempted with respect to the "'Honey' flavor name and honey graphic." Dkt. No. 16

at 8. That is, Defendant's memorandum of law in support of its motion, does not argue that the

"made with real honey" representation is preempted. That failure alone is sufficient for the

Court to conclude that Plaintiff's claims are not preempted with respect to that representation.

*See Bruesewitz*, 562 U.S. at 251 n.2 ("Federal preemption is an affirmative defense upon which

the defendant bears the burden of proof." (citations omitted)).

      Even assuming Defendant had properly made this argument, the Court cannot conclude,

based on the Complaint alone, that the "made with real honey" representation is also a

representation about the flavor of the Product. The Complaint contains allegations that plausibly

suggest that, through its statements about honey, Defendant intended to and did go beyond

advertising the flavor of the product to convey a message about its sweetening properties. The

Complaint alleges that individuals "are increasingly seeking foods sweetened with honey" to

avoid the deleterious effects of consuming too much sugar. Dkt. No. 1 ¶¶ 29–34. As a result,

"[r]oughly 60% of consumers look for references to honey on a front label when deciding what

to buy." *Id.* ¶ 38. "[T]he statement that the Product is 'Made with real Honey' convey[s] that

honey is the primary and/or significant sweetening ingredient." *Id.* ¶ 48. The allegations that

suggest that "made with real honey" is a statement of ingredients, not flavor, is supported by the

statement elsewhere on the label that the Product does not contain "high fructose corn syrup."

*Id.* ¶ 1. The Complaint thus plausibly suggests that Defendant designed its product and the

marketing to appeal to that segment of the public who would pay a price premium to obtain the

honey ingredient and to avoid the deleterious effects of sugar. In short, it is plausible from the

allegations in the Complaint that the "made with real honey" representation is a representation

solely about the ingredients in the Product, and not about the Product's flavor.  *See Hoffmann v. Kashi Sales, L.L.C.*, 2022 WL 17823171, at *4 (S.D.N.Y. Dec. 20, 2022) ("Defendant's use of the words 'Made with' presents honey as an ingredient, not a flavor."); *Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1143 (C.D. Cal. 2010) ("[T]the phrase 'Made With Real Vegetables' appears to refer to the products' supposed constituent ingredients and not to flavor."); *cf. Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 279 (S.D.N.Y. 2022) (concluding that "the label's use of the word 'honey' by itself"—and because "the Product's label does not use language such as [*inter alia*] 'made with'"—"merely represents that the Product is honey flavored, not that honey is an ingredient—much less, the predominant sweetening ingredient"). By prohibiting Defendant from marketing the Product as "made with real honey," New York would not be prohibiting Defendant from using a label that federal law demands or imposing a requirement inconsistent with federal requirements.[2]

Stated otherwise, "the statute's barrier to suit is [not] evident from the face of the complaint," as required for "preemption [to] constitute[] grounds for dismissal" at the pleadings stage.  *K.D. Hercules, Inc.*, 2021 WL 1614369, at *2 (citation omitted); *see also Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4224723, at *9 (N.D. Cal. Sept. 22, 2017) ("[B]ecause the plaintiffs' claims appear to be based on ingredients rather than flavor, the Court does not find the plaintiffs' claims preempted.").

---

[2] This conclusion is supported by the fact that the "made with real honey" representation goes beyond what is required by the federal labeling regulation governing flavors.  That regulation requires that "the name of the food on the principal display panel . . . [be] accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla.'"  21 C.F.R. § 101.22(i)(1). The name of the Product—"Honey Graham Crackers"—thus fulfills Defendant's obligations under the regulation.  By adding the "made with real honey" statement, Defendant is going beyond what was required under federal law and thus arguably is referencing honey as an ingredient instead of a flavor.

**II.      The Motion to Dismiss the GBL §§ 349 and 350 Claims**

That federal law does not preempt Plaintiff's state-law claims does not mean that New York law permits those claims.  Defendant argues that Plaintiff has failed to state a violation of Section 239 or 350 of the GBL.

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  *Id.* § 350.  To sustain a claim under either section, "a plaintiff must allege: (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are deceptive or misleading in a material way, and (3) that the plaintiff has been injured as a result."  *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 675 (S.D.N.Y. 2021); *see Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (at the pleading stage, plaintiff must allege that "on account of a materially misleading practice, [plaintiff] purchased a product and did not receive the full value of [their] purchase." (citation omitted)).

A deceptive act or practice is one "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Budhani*, 527 F. Supp. 3d at 675–76 (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).  In determining whether a label is deceptive, "[c]ourts view each allegedly misleading statement . . . as a whole," *Wurtzburger v. Ky. Fried Chicken*, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (internal quotation marks and citation omitted), and "context is crucial," *Fink v. Time Warner*, 714 F.3d 739, 742 (2d Cir. 2013); *see also Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020) ("Courts 'view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.'" (quoting

18

*Wurtzburger*, 2017 WL 6416296, at *3)); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp.

3d 47, 50 (S.D.N.Y. 2020) (evaluating the "messages on the container . . . in sequence" in order

to "analyze [their] total effect" on the consumer).

The Court treads carefully in considering Plaintiff's claims at the pleading stage.

Although "it is well settled that a court may determine as a matter of law that an allegedly

deceptive advertisement would not have misled a reasonable consumer," *Fink*, 714 F.3d at 741,

whether an advertisement would mislead a reasonable customer "is generally a question of fact

not suited for resolution at the motion to dismiss stage," *Duran v. Henkel of N. Am.*, 450 F. Supp.

3d 337, 346 (S.D.N.Y. 2020) (collecting cases); *see Kacocha v. Nestle Purina Petcare Co.*, 2016

WL 4367991, at *14, *16 (S.D.N.Y. Aug. 12, 2016) ("[A]mple case law exists allowing § 349

claims over allegedly deceptively labeled consumer goods to progress beyond the motion-to-

dismiss stage, largely based on the view that the question of what might deceive the reasonable

customer is a question of fact"; only in "'rare situation[s] [is] granting a motion to dismiss . . .

appropriate' with respect to the issue of whether a reasonable consumer would be misled by

representations about a product." (citation omitted)); *Cooper v. Anheuser-Busch, LLC*, 553 F.

Supp. 3d 83, 95 (S.D.N.Y. 2021) (noting that while in some instances it may be possible for the

Court to decide whether a product is materially misleading on a motion to dismiss, "these cases

are exceptions to the norm").  The understanding that a reasonable consumer may take from

particular language is not always answerable in the abstract; it may rest on the community to

which the advertisement is directed and the meaning that such community would ascribe to the

language used.  As the Second Circuit has held, "[p]laintiffs must plausibly allege that a

significant portion of the general consuming public or *of targeted consumers*, acting reasonably

in the circumstances, could be misled." *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19

(2d Cir. 2018) (emphasis added) (internal quotation marks and citation omitted).  This

determination often requires discovery.  *See Verizon Directories Corp. v. Yellow Book USA, Inc.*,

309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004) ("This central issue cannot be resolved without

surveys, expert testimony, and other evidence of what is happening in the real world."); *see also*

*Cooper*, 553 F. Supp. 3d at 104 (same).

The Court first addresses the Product's "graham" and whole wheat representations and

then addresses its honey representations.  The Court concludes that Plaintiff has alleged

sufficient facts to state a claim that Defendant's labeling of its honey graham crackers is

deceptive under Sections 349 and 350.

### A.    Graham and Whole Wheat Representations

Plaintiff pleads that a reasonable consumer would believe that a graham cracker is made

primarily of graham wheat or whole-wheat flour.  According to Plaintiff, dictionaries define a

"graham cracker" as a "slightly sweet cracker made of whole wheat flour" and "a semisweet

cracker, usually rectangular in shape, made chiefly of whole-wheat flour."  Dkt. No. 1 ¶ 16.

Graham flour is an alternative name for whole wheat flour.  *Id.* ¶ 14.  Plaintiff alleges that

"[s]tudies and reports show that when product names use terms like "graham," "honey wheat,"

"stone ground," "harvest," "whole milled," "multigrain" and/or "hearty wheat," between 30% to

50% of participants believed such foods have more whole grains than they do."  *Id.* ¶ 12.

Further, Plaintiff alleges that the FTC and FDA recognize that "[m]any reasonable consumers

will likely understand 'whole grain' [claims] to mean that all, or virtually all, of the food product

is whole grain, or that all of the grain ingredients in the product are whole grains."  *Id.* ¶ 20.  The

whole wheat content of a product is a matter of some significance to consumers.  Plaintiff alleges

that "[c]onsumers increasingly prefer whole grains to non-whole grains because they are

nutritionally superior."  *Id.* ¶ 4.  The Court is required to accept all of those factual allegations as

true.  It is plausible that a reasonable consumer would construe the front label of the Product, with its emphasis on "Graham," pictures of dark-colored crackers, and statement that the Product "Contains 8g of whole grain per serving," to constitute a representation by Defendant that whole-grain graham flour is the predominant flour used in the Product.

Two judges in this District have rejected at the pleading stage nearly identical motions to dismiss claims alleging that the defendant improperly branded as "graham" crackers products that were made primarily with refined flour rather than graham or whole wheat flour.  In *Campbell v. Whole Foods Market Grp., Inc.*, 516 F. Supp. 3d 370 (S.D.N.Y. 2021), the Hon. Gregory H. Woods held that allegations that the defendant marketed a product comprised primarily of refined flour as organic Honey Graham crackers stated a claim under Sections 349 and 350.  *Id.* at 382–83.  The Court reasoned that "a reasonable consumer who is aware of the meaning of the word 'graham' would read the packaging" to "represent[] that the product is made from 'whole grain,'" and, having that understanding, would feel deceived upon learning that the product was made primarily from refined flour.  *Id.* at 383.  The court based its conclusion on the Second Circuit's decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), which it found to be "directly on point."  *Campbell*, 516 F. Supp. 3d at 382.  There, the Second Circuit held that the plaintiff had stated a claim under Sections 349 and 350 because the statements "Whole Grain" and "Made with Whole Grain" when used in connection with a cracker were "misleading because they communicated to the reasonable consumer that the grain in the product is predominantly, if not entirely, *whole grain*."  *Mantikas*, 910 F.3d at 637 (emphasis in original).  Judge Woods concluded that "a reasonable consumer who is aware of the meaning of the word 'graham' would read the packaging in essentially the same way as the plaintiffs in *Mantikas*."  *Campbell*, 516 F. Supp. 3d at 383.  More recently, the Hon. Jed S.

Rakoff reached the same conclusion in *Valcarel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268.

Following *Campbell*, Judge Rakoff accepted that "a reasonable consumer understands that

'graham' is another name for whole wheat flour—a not unreasonable assumption at this stage

given the dictionary definitions of both 'graham' and 'graham crackers,' respectively." *Id.* at

279.  He then concluded that "*Mantikas* dictated the answer in *Campbell* and . . . does the same

here" and denied a motion to dismiss the plaintiff's Sections 349 and 350 claims on those

grounds.  *Id.* at 279.

The same conclusion follows here.  Not only is the Product called "graham crackers," but

the label also notes that the Product "[c]ontains 8g of whole grain per serving," an assertion that

is contained in a gold oval, which would draw the consumer's attention, Dkt. No. 1 ¶¶ 1, 21, and

has "pictures of dark colored crackers," *id.* ¶ 15.  The Complaint alleges that these aspects of the

label "gives reasonable consumers the impression that whole grain graham flour is the

predominant flour used." *Id.* ¶ 15.  There is no indication from the front of the label that the

Product contains anything but whole wheat flour.  Accordingly, these allegations are sufficient to

state a claim under Sections 349 and 350.

Defendant's attempt to distinguish Plaintiff's complaint from *Campbell* and *Valcarcel* is

unpersuasive.  Defendant argues that the conclusions reached in *Campbell* and *Valcarcel* are

explained by the emphasis that the manufacturers in those cases placed on the word "Graham,"

which "could imply that the product contained a predominance of graham flour."  Dkt. No. 16 at

14.  In *Campbell*, for example, the word "Graham" was written in the same orange letters as the

word "Honey" that appeared above it and in a larger font and different color and type face than

the word "crackers" that follow it.  516 F. Supp. 3d at 377.  In *Valcarel*, the word "graham"

appeared both larger and in a distinct font from the word "crackers," which appeared under it.

577 F. Supp. 3d at 274.  Here, the words "Graham" and "Crackers" are in the same color and the same type face, though Defendant admits that the word "Graham" is larger than the word "Crackers."  Dkt. No. 16 at 14; *see also* Dkt. No. 1 ¶ 1.  Instead, Defendant argues that the word "Honey," which is in a different color, is emphasized on the packaging.  Dkt. No. 16 at 4.  At the pleading stage, the discrepancies among the packaging identified by Defendant represent a distinction that does not make a difference.  In *Mantikas* itself, the words "Whole Grain" and "Made with Whole Grain," although in large print in the center of the front panel of the box, 910 F.3d at 634, were featured far less prominently than the brand name "Cheez-It," *id.* at 635.  Though these differences may make a difference at later stages in the litigation, Plaintiff has plausibly alleged that a reasonable consumer, viewing the package, might expect the Product to be made primarily with whole-grain flour.

Defendant also relies on two out-of-district decisions for its argument that the product name—"graham crackers"—was not misleading:  *Hauger v. Dollar Gen. Corp.*, 2022 WL 2532487 (C.D. Ill. July 7, 2022), and *Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197 (E.D.N.Y. July 10, 2020).  In both *Hauger* and *Kennedy*, the plaintiffs, like Plaintiff here, alleged that the "graham crackers" representations were misleading, because the products contained predominantly white flour, and not graham flour.  *See Hauger*, 2022 WL 2532487, at * 1; *Kennedy*, 2020 WL 4006197, at * 3.  The *Kennedy* court dismissed that claim as implausible because a "reasonable consumer would not associate 'graham' as meaning 'graham flour.'" *Kennedy*, 2020 WL 4006197, at *9.  Similarly, the court in *Hauger* found that a reasonable consumer would not be confused, because a consumer could consult the ingredient list to learn the ingredients that comprise the crackers.  *Hauger*, 2022 WL 2532487, at *5.

The Court finds both cases unpersuasive at this stage.  With respect to *Kennedy*, the Court agrees with the courts in *Campbell* and *Varcerel*, both of which concluded  that the "judge . . . erred in substituting its own understanding of what 'reasonable consumers' interpret 'graham crackers' to mean."  *Valcarcel*, 577 F. Supp. 3d at 279; *see also Campbell*, 516 F. Supp. 3d at 384 ("[I]n evaluating the allegations here, the Court cannot assume that consumers will be equally ignorant of the clear-cut meaning of the term 'graham.'").  Defendant may very well show that no reasonable jury could find that a reasonable consumer understands graham crackers as Plaintiff apparently does, but at this stage the Court must accept as true Plaintiff's factual allegations and the plausible inferences that can be drawn therefrom.  For the same reasons, to the degree that Defendant relies on *Hauger* for that proposition, *see* Dkt. No. 16 at 16, the Court rejects the *Hauger* court's reasoning.  And any argument that a reasonable consumer would consult the ingredient list, which might correct any misimpressions, *see* Dkt. No. 16 at 19–20, is squarely foreclosed by *Mantikas*, where the Circuit held the opposite:  "[A] reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box."[3]  *Mantikas*, 910 F.3d at 637.[4]

---

[3] To the degree that Defendant argues that *Mantikas* is inapplicable because "the front panel did not contain misleading information in the first place," Dkt. No. 16 at 21 (emphasis removed), the Court has already rejected that contention.

[4] The Second Circuit, in a non-precedential opinion, has since sought to clarify the reach of *Mantikas*.  In *Hardy v. Ole Mexican Foods, Inc.*, 2023 WL 3577867 (2d Cir. May 22, 2023) (summary order), the Second Circuit held that "*Mantikas* reaffirmed that we will 'consider the challenged advertisement as a whole, including disclaimers and qualifying language' and that 'context is crucial' in evaluating deceptive-marketing claims."  *Id.* at *3 (quoting *Mantikas*, 910 F.3d at 636).  *Mantikas*, the court continued,

> instructs that in considering advertisements regarding a product's nutritional content, a small-print ingredient list cannot 'cure' front-label representations that are otherwise highly deceptive because 'reasonable consumers expect that the

Additionally, even if the Court were to accept Defendant's argument that "graham crackers" need not mean "whole wheat crackers" to the reasonable consumer and that a reasonable consumer might not make any conclusions about the "*predominance* of any flour ingredient in the Product" based on the representations on the label, Dkt. No. 16 at 13, 15–16 (emphasis in original), "[w]here a representation is capable of two possible reasonable interpretations, the misleading one should not be rejected simply because there is an alternative, non-misleading interpretation," *Fishon v. Peloton Interactive, Inc.*, 2020 WL 6564755, at *7 (S.D.N.Y. Nov. 9, 2020).  Here, though the whole wheat and graham representations may be susceptible to more than one plausible interpretation, the Court cannot reject the allegedly misleading interpretation on Defendant's motion to dismiss.  Accordingly, Defendant's motion to dismiss the Sections 349 and 350 claims insofar as they are based on the Product label's reference to "graham" is denied.

---

ingredient list contains more detailed information about the product that *confirms* other representations on the packaging.'   *Mantikas* does not suggest that its reasoning necessarily applies outside the context of nutritional labels.

*Id.* (emphasis in original) (quoting *Mantikas*, 910 F.3d at 637).  In *Hardy*, the plaintiff claimed that the defendant's packaging, which incorporated the phrase "A Taste of Mexico" and contained graphics resembling the Mexican flag, would mislead a reasonable consumer to believe that the product was manufactured in Mexico.  *Id.* at *2.  In holding that the complaint was properly dismissed, the court distinguished *Mantikas*, concluding that, while the challenged features on the packaging might have "encourage[d] consumers to draw *associations* with Mexico" and while "the products contain[ed] Mexican-style flavors and ingredients, no reasonable consumer would construe these elements to be an affirmative representation that the La Banderita Products were in fact *manufactured* in Mexico," especially because "the back of the packaging conspicuously states that the products are 'MADE IN U.S.A.' and 'MANUFACTURED [IN] NORCROSS, GA.'"  *Id.* at *2 (emphasis added).  Under these circumstances, the court concluded that the holding of *Mantikas* that misleading information on the front of a box could not be "cured by reverse-side disclosures" was inapplicable.  *Id.*

For reasons stated above, Plaintiff here has plausibly pled that the front of the box contains affirmative misrepresentations and thus Defendant cannot point to the nutritional label to cure those misrepresentations.  Defendant's argument that the packaging as a whole was not misleading thus will have to await summary judgment.

### B.    "Honey" Representations

Plaintiff alleges that the Product's "honey" labeling and imagery is misleading because a reasonable consumer would understand the Product's label to suggest that honey is the Product's "primary and/or significant sweetening ingredient" when in fact sugar "is the predominant sweetening agent" and honey represents "slightly above 2%" of the product.  Dkt. No. 1 ¶¶ 48–50.  Defendant argues that a reasonable consumer would understand the word "honey" to "refer[] to the Product's flavor, not its primary sweetener."  Dkt. No. 16 at 16.  Defendant further argues that even if the word "honey" did reflect how the Product were sweetened, the Complaint "fails to allege any basis for concluding that honey is not a 'significant' sweetener."  *Id.* at 17.

As a threshold matter, Defendant's contention that the word "honey" simply refers to the Product's flavor is unpersuasive.  As discussed above, though the "honey" in the Product's name and the honey dipper image make representations about the Product's flavor (perhaps in addition to the Product's ingredients), the Complaint plausibly alleges that the "made with real honey" representation is one about the ingredients that the Product contains.  *See supra* pp. 15–17; *see also Campbell*, 516 F. Supp. 3d at 383 n.4 ("The absence or presence of the words 'made with' can make a substantial difference where the relevant term is both an ingredient and a flavor. 'Made with' designates a product as an ingredient.").  And the Complaint adequately alleges that a reasonable consumer might conclude that honey is the predominant or a significant sweetener. "In determining whether a reasonable consumer would be misled, '[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.'" *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (alteration in original) (quoting *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020)); *see also Fink*, 714 F.3d at 742 ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial.").  Here, the Complaint

alleges that consumers care about whether a product is sweetened with honey instead of sugar—and are willing to pay more for products sweetened with honey—because of honey's healthful properties. *See* Dkt. No. 1 ¶¶ 29–47.  The representation that the product is "made with real honey" thus itself suggests that honey is both an ingredient and a primary ingredient.  *Campbell*, 516 F. Supp. 3d at 386 ("In the same way that the references to 'whole wheat' on the box at issue in *Mantikas* could be read to imply that the predominant flour was whole wheat, notwithstanding the product's ingredient list, the references to 'honey' on this product's box can be read to suggest that honey is the predominant sweetener.").  And that representation appears near a representation that the product contains "[n]o high fructose corn syrup."  By explicitly stating that the Product does not contain high fructose corn syrup, another common sweetening agent, it is plausible that a reasonable consumer might, when viewing the Product's label, conclude that honey is the predominant or at least a significant sweetening agent.  "Thus, based on plaintiff's allegations, which the Court must accept as true, and the specific representations on the Product's packaging, the Court cannot conclude it is [implausible] for a reasonable consumer to be misled into believing the Product was predominantly sweetened with honey."  *Hoffman*, 2022 WL 17823171, at *5.

Nor is Defendant's argument that Plaintiff has failed to plead that honey is *not* a significant ingredient persuasive.  Defendant contends that Plaintiff "fails to allege any basis for concluding that honey is not a 'significant' sweetener."  Dkt. No. 16 at 17.  Specifically, Defendant points to the Complaint's allegation that "honey is sweeter than sugar, so less of it is needed to achieve the same level of sweetness," *id.* (quoting Dkt. No. 1. ¶ 45), and argues that, because of this property, honey can still be a "significant" sweetener, even if it is listed below sugar on the ingredient list, *id.*  Though there is an appeal to Defendant's argument and it may

ultimately prevail if Defendant is able to offer proof on summary judgment, the Complaint contains sufficient allegations to conclude on a motion to dismiss that honey is not a significant sweetener.[5]  It alleges that consumers care about the healthful properties of honey and, at least part of the reason why they do so is to avoid the harmful properties of sugar, *see, e.g.*, Dkt. No. 1 ¶¶ 30, 33, but that sugar is listed higher in the ingredient list than honey, *see id.* ¶ 18.  It alleges that "[l]aboratory analysis and/or review of the Nutrition Facts and ingredient list indicates the amount of honey is slightly above 2%."  *Id.* ¶ 50.  Finally, it alleges that honey is included in the Product to impart a darker color onto the graham crackers in order to create the impression that the Product had more whole grain graham flour than it actually does.  *See id.* ¶ 51 ("Though the Product contains honey purportedly for sweetening, its most significant function is to impart a darker color."); *see also id.* ¶¶ 52–54.  Viewed in the light most favorable to Plaintiff, these allegations suggest that honey is not a significant sweetening agent and does not meaningfully lower the amount of sugar in the Product; rather, they suggest that honey plays only a trivial role in the Product's sweetness and was added to the Product for reasons unrelated to its sweetness.  These allegations, if proven at trial, would make the impression that honey is the predominant or a significant sweetener in the Product misleading.  Accordingly, Defendant's motion to dismiss the Sections 349 and 350 claims insofar as they are based on the Product label's reference to "honey" is also denied.

### C.    Injury

Defendant argues, in the alternative, that Plaintiff's Sections 349 and 350 claims fail for the independent reason that Plaintiff's allegation that he paid a price premium is conclusory

---

[5] And for the reasons stated above, *see supra* p. 24 & n.3, the Court rejects Defendant's argument that Plaintiff's claim is defeated by the ingredient list, *see* Dkt. No. 16 at 21.

because he does not identify any other allegedly similar products or the prices for which they were sold.  Dkt. No. 16 at 22.

"A plaintiff can plead injury and causation for purposes of Sections 349 and 350 in at least one of two ways."  *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 99 (S.D.N.Y. 2022).  "First, the plaintiff can plead that she was exposed to a material deceptive act and relied on that misrepresented fact to her detriment.  The plaintiff is directly injured when she pays a higher price than she otherwise would have paid based on her belief in the fact that is misrepresented."  *Id.*  "Second and importantly, however, a plaintiff can also plead both injury and causation under GBL §§ 349 and 350, by alleging that the defendant's misleading or deceptive advertising campaign caused a price premium, that the price premium was charged both to those who saw and relied upon the false representations and those who did not, and that, as a result of the price premium, plaintiff was charged a price she would not otherwise have been charged but for the false campaign."  *Id.* at 100.

Plaintiff alleges that, as a result of Defendant's false and misleading representations, "the Product is sold at a premium price . . . higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and warranties."  Dkt. No. 1 ¶ 61; *see also id.* ¶ 60 ("Plaintiff paid more for the Product based on the representations, and had he known the truth, he would not have bought it or would have paid less.").  That is a sufficient allegation at this stage for Plaintiff to state a claim under Sections 349 and 350.  *See Axon v. Fla.'s Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (holding that it is sufficient for a plaintiff to allege "that the price of the product was inflated as a result of defendants deceptions [to] meet[] the injury requirement" and that it is not necessary for the plaintiff "to identify the prices of competing products"); *Richardson v. Edgewell Pers. Care,*

*LLC*, 2023 WL 1109646, at *5 (S.D.N.Y. Jan. 30, 2023) ("Plaintiff need not . . . offer

'underlying facts in support' of their theory of injury at the pleading stage" (citation omitted));

*see also McTyere v. Apple, Inc.*, 2023 WL 2585888, at *6 (W.D.N.Y. Mar. 21, 2023) (same);

*Nguyen v. Algenist LLC*, 2022 WL 17251733, at *4 (S.D.N.Y. Nov. 28, 2022) (same); *Valcarcel*,

577 F. Supp. 3d at 280 (same).

## III. The Motion to Dismiss the Common Law Claims

Defendant also moves to dismiss Plaintiff's common-law claims for breach of warranty,

fraud, and unjust enrichment claims.[6]  Dkt. No. 16 at 23–24.  The Court addresses each in turn.

### A. The Warranty Claims

Plaintiff asserts three separate warranty claims: (1) breach of express warranty; (2) breach

of implied warranty; and (3) violation of the Magnuson-Moss Warranty Act.  *See* Dkt. No. 1

¶¶ 109–24.  Defendant argues that the express warranty claim must fail because Plaintiff did not

provide pre-suit notice; the implied warranty of merchantability claim must fail because Plaintiff

does not claim that the Product is unfit for consumption; and the MMWA claim must fail

because the state-law warranty claims fail.  *Id.* at 23.

An express warranty is an "affirmation of fact or promise made by the seller to the buyer

which relates to goods and becomes part of the basis of the bargain."  N.Y.U.C.C. § 2-313(1)(a).

Under New York law,

---

[6] Defendant also moves to dismiss a negligent misrepresentation claim.  Dkt. No. 16 at 23.
However, the Complaint does not appear to plead a negligent misrepresentation claim.
Accordingly, Defendant's motion is denied as moot insofar as it seeks to dismiss a claim for
negligent misrepresentation.  In his response memorandum of law, Plaintiff does not reference a
negligent misrepresentation claim.  *See generally* Dkt. No. 18.  Thus, to the degree the
Complaint can be read to state a negligent misrepresentation claim, that claim has been
abandoned.  *See Laface v. E. Suffolk BOCES*, 2019 WL 1959489, at *8 (E.D.N.Y. May 2, 2019)
(alteration in original) (collecting cases) (quoting *Youmans v. Schriro*, 2013 WL 6284422, at *5
(S.D.N.Y. Dec. 3, 2013)).

> [t]o state a claim for breach of express warranty . . . a plaintiff must allege (1) the
> existence of a material statement amounting to a warranty, (2) the buyer's reliance
> on this warranty as a basis for the contract with the immediate seller, (3) breach of
> the warranty, and (4) injury to the buyer caused by the breach.

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482

(S.D.N.Y. 2014); *see also Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)

(same).  To assert a breach of warranty claim under New York law, "the buyer must within a

reasonable time after he discovers or should have discovered any breach notify the seller of

breach or be barred from any remedy."  N.Y.U.C.C. § 2-607(3)(a).  Thus, a breach of express

warranty claim requires that "a buyer . . . provide the seller with timely notice of the alleged

breach of warranty."  *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (citing

N.Y.U.C.C. § 2-607(3)(a)).  "[R]equiring notice is designed to defeat commercial bad faith, not

to deprive a good faith consumer of his remedy."  N.Y.U.C.C § 2-607, cmt. 4.  "[T]he

sufficiency and timeliness of the notice is generally a question for the jury."  *Hubbard v. Gen.*

*Motors Corp.*, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996).  Plaintiff here, however, has

not pleaded enough to show that he provided reasonable notice.

Plaintiff alleges that he "recently became aware of Defendant's breach of the Product's

warranties" and that he "provides notice to Defendant . . . that it breached the express and

implied warranties associated with the Product."  Dkt. No. 1 ¶¶ 118–19.  He also alleges that

"Defendant received notice and should have been aware of these issues due to complaints by

third-parties, including regulators, competitors, and consumers, to its main offices, and by

consumers through online forums."  *Id.* ¶ 120.

There is a split of authority whether a filed complaint qualifies as sufficient notice.  The

majority view is that it does not.  *See Wiggins v. Unilever U.S., Inc.*, 2023 WL 4744058, at *17

(S.D.N.Y. July 25, 2023); *Wheeler v. Topps Co., Inc.*, 2023 WL 405015, at *5 (S.D.N.Y. Jan. 25,

2023) (arguing that requirement that buyer provide notice or else "be barred from any remedy" would be nonsensical if notice could be provided with a lawsuit); *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 246 (S.D.N.Y. 2021) ("The weight of authority in this Circuit does not view a complaint to be by itself sufficient reasonable notice"); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244–45 (S.D.N.Y. 2020).  There is a minority view that "a plaintiff's pleadings may constitute reasonable notice in certain cases."  *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 262 n.6 (E.D.N.Y. 2014) (citing *Panda Capital Corp. v. Kopo Int'l, Inc.*, 662 N.Y.S.2d 584, 586 (2d Dep't 1997)); *see also Patellos v. Hello Prod., LLC*, 523 F. Supp. 3d 523, 534 (S.D.N.Y. 2021) ("[W]hat is key is not the form of the notice, but its timing—that notice be given promptly after the injury occurs (or, as here, is apparent).").  The Court need not engage that debate.  *See Wiggins*, 2023 WL 4744058, at *17. Plaintiff's allegations are entirely conclusory.  Plaintiff does not allege when he "recently" became aware of the breach of the Product's warranties.  Accordingly, he has not pled facts that would establish he gave timely notice.  *See id.*; *Petrosino v. Stearn's Prods., Inc.*, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018) ("Plaintiff must provide factual allegations, as opposed to conclusory statements, supporting the contention that she notified Defendant of the alleged breach within a reasonable time after discovering them.").[7]

---

[7] Plaintiff's allegation that Defendant received notice of the defects of the Product from third parties also is not sufficient to satisfy reasonable notice requirement of the New York Uniform Commercial Code ("N.Y.U.C.C.").  Aside from the conclusory nature of the allegation, the N.Y.U.C.C. requires the merchant to be given "notice of Plaintiff's particular transactions," and is not satisfied by allegation that the defendant was on notice of an issue with their product. *Barton*, 535 F. Supp. 3d at 245 (collecting cases); *see also Gordon v. Target Corp.*, 2022 WL 836773, at *14 (S.D.N.Y. Mar. 18, 2022) (allegation that defendant was aware of misrepresentation due to complaints by regulators, competitors and consumers did not satisfy N.Y.U.C.C.); *Campbell*, 516 F. Supp. 3d at 391 n.12 (allegation that defendant was made aware of misrepresentations "due to numerous complaints by consumers to its main office over the past several years" was not sufficient).

Plaintiff also argues that notice requirements have been "jettisoned" for retail sales.  Dkt. No. 18 at 9 (quoting *Gavilanes v. Gerber Prods. Co.*, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021)); *see also Neri v. R.J. Reynolds Co.*, 2000 WL 33911224, at *19 (N.D.N.Y. Sept. 28, 2000) (stating that New York cases "sugges[t] that the notice requirement does not apply to retail sales").  There is some limited state authority holding that the notice requirement does not apply where, as a result of the breach of warranty, the plaintiff suffered physical injury.  *See Fischer v. Mead Johnson Labs.*, 41 341 N.Y.S.2d 257, 259 (2d Dep't 1973) (notice requirement did not apply to a claim for physical injury stemming from plaintiff's wife's consumption of a contraceptive pill); *see also Silverstein v. R.H. Macy & Co.*, 40 N.Y.S.2d 916, 920 (1st Dep't 1943) (notice requirement of predecessor statute did not apply to claim that plaintiff suffered serious physical injuries for failure of gymnastic "chinning bar" to function as warranted); *Kennedy v. F.W. Woolworth Co.*, 200 N.Y.S. 121, 122 (1st Dep't 1923) (notice requirement of predecessor statute did not apply to warranty breach claim arising from physical injury upon eating defendant's product when the complaint, "whatever its nomenclature of form, is really grounded on tortious elements").  "[T]o the extent that these decisions create an exception to the notice requirement for breach of warranty claims, their reasoning relies on the physical harm suffered by plaintiffs that made their case more like a tort than a contract dispute."  *Wheeler*, 2023 WL 405015, at * 5; *see Gordon v. Target Corp.*, 2022 WL 836773, at *14 (S.D.N.Y. Mar. 18, 2022) (holding that the exception to the notice requirement for retail consumers does not apply where the plaintiff alleges only economic injury); *Budhani*, 527 F. Supp. 3d at 685 ( "The pre-suit notice requirement is waived only in cases involving personal injury.").  These cases thus have no application here where Plaintiff claims purely economic injury.

Plaintiff also brings a claim for breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose under the New York Uniform Commercial Code ("N.Y.U.C.C."). "Under the UCC, as adopted in New York, if a seller is a merchant, there is an implied contract that the goods will be of merchantable quality." *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015). Section 2-314 of the N.Y.U.C.C. provides that to be merchantable, goods "must pass without objection in the trade under the contract description; . . . [be] fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label if any." N.Y.U.C.C. § 2-314(2)(a), (c), (f). The implied warranty cause of action "sounds in contract." *Denny v. Ford Motor Co.*, 662 N.E.2d 730, 733 (N.Y. 1995). A breach of the implied warranty of merchantability occurs when the product at issue is "unfit for the ordinary purposes for which such goods are used." N.Y.U.C.C. § 2-314(2)(c).

Section 2-315 of the N.Y.U.C.C. provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purposes." N.Y.U.C.C. § 2-315. "To establish a claim for the breach of an implied warranty of fitness for a particular purpose, 'the buyer must establish that the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill.'" *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoe Co. LLC*, 2008 WL 314557, at *3 (N.D.N.Y. Feb. 4, 2008), *aff'd sub nom. Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 F. App'x 110 (2d Cir. 2010) (quoting *Saratoga Spa &*

*Bath v. Beeche Sys. Corp.*, 656 N.Y.S.2d 787, 790 (3d Dep't 1997)); *see Miramontes v. Ralph Lauren Corp.*, 2023 WL 3293424, at *11 (S.D.N.Y. May 5, 2023); *Levin v. Johnson & Johnson*, 2021 WL 9553623, at *6 (E.D.N.Y. Jan. 11, 2021), *reconsideration denied*, 2022 WL 198501 (E.D.N.Y. Jan. 21, 2022); 1 White, Summers, & Hillman, Uniform Commercial Code § 10:36 (6th ed. Nov. 2022 Update). "Where a plaintiff fails to plead that a defendant knew of the particular purpose for which that plaintiff was buying a product, a complaint will be dismissed." *Guariglia v. Procter & Gamble Co.*, 2018 WL 1335356, at *8 (E.D.N.Y. Mar. 14, 2018).[8]

Plaintiff fails to plead a claim for breach of the implied warranty of merchantability or the warranty of fitness for a particular purpose. He alleges that Defendant "impliedly warranted to Plaintiff that [the Product] contained whole grain graham flour and honey as its primary grain and sweeting ingredient instead of enriched flour and sugar." Dkt. No. 1 ¶ 109. He further alleges that "[t]he Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it contained predominant amounts of whole grains and honey relative to refined grains and sugar." *Id.* ¶ 122. However, "[a] warranty of merchantability . . . does not mean that the product will fulfill a buyer's every expectation but rather simply provides for a minimum level of quality." *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *25 (E.D.N.Y. July 21, 2010) (internal quotation marks omitted) (quoting *Viscusi v. Procter & Gamble*, 2007 WL

_____

[8] The N.Y.U.C.C.'s notice requirement also applies to claims for breach of implied warranty. *See MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 101 (2d Cir. 2023) (upholding district court's dismissal of implied warranty claim for failure to allege notice); *see also Bellevue S. Assocs. v. HRH Const. Corp.*, 579 N.E.2d 195, 203 (N.Y. 1991) ("Defenses available to claims of breach of the implied warranty of merchantability include the buyer's . . . failure to give notice."). As noted, Plaintiff has failed to satisfy that requirement.

2071546, at *13 (E.D.N.Y. July 16, 2007)).  "Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality."  *Silva*, 2015 WL 5360022, at *11; *see Kelly v. Beliv LLC*, 2022 WL 16836985, at *8 (S.D.N.Y. Nov. 9, 2022); *Kamara v Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69, 80 (S.D.N.Y. 2021); *Budhani*, 527 F. Supp. 3d at 686; *Donahue v. Ferolito, Vultaggio & Sons*, 786 N.Y.S.2d 153, 155 (1st Dep't 2004).  Plaintiff does not allege that the Product was unfit for human consumption.  He therefore fails to allege that the Product was unfit for the ordinary purposes for which it was intended.

Plaintiff also fails to allege that Defendant breached the implied warranty of fitness for a particular purpose.  To establish that claim, Plaintiff must plead, and prove, that Defendant knew of the particular purpose for which the goods were required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods.  *Saratoga Spa & Bath*, 656 N.Y.S.2d at 890.  Plaintiff argues that the Product was unfit for the particular purpose because it did not adhere to the "2015-2020 Dietary Guidelines for Americans [(the "Dietary Guidelines"),] [which] recommend that at least half of all grains eaten be whole grains."  Dkt. No. 18 at 10 (quoting Dkt. No. 1 ¶ 19); *see also* Dkt. No. 1 ¶ 27; N.Y.U.C.C. § 2-315.  But Plaintiff does not allege facts that Defendant knew that Plaintiff intended to purchase the Product for the purpose of satisfying the particular nutritional goal under the Dietary Guidelines rather than for the joy and pleasure of ingesting a cracker of the shape, flavor, color, and texture of a graham cracker that also had a honey flavor.  Plaintiff simply alleges in a conclusory manner that "[t]he Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it contained predominant amounts of whole grains and honey relative to refined grains and sugar, and he

relied on Defendant's skill and judgment to select or furnish such a suitable product." *Id.* ¶ 123. But conclusions are not facts. *See Twombly*, 550 U.S. at 555. The claim of breach of the implied warranty of fitness therefore fails.

Finally, Plaintiff's claim under the MMWA must be dismissed because Plaintiff has not alleged an underlying breach of warranty. *See Kamara*, 570 F. Supp. 3d at 80–81. The MMWA grants relief to a consumer "who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty." *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)).

Defendant argues that "[t]he MMWA claim fails automatically because the state-law warranty claims fail, because the food label is not a written warranty under the statute, and because there are not 100 named plaintiffs and Plaintiff's claim is not for at least $50,000." Dkt. No. 16 at 23 (internal citations omitted). "To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015); *see also Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) ("[T]he MMWA merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages." (internal quotation marks and citation omitted)); *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006) ("The MMWA, however, creates no additional bases for liability, but allows a consumer to recover damages under existing state law, and attorneys fees."). Because Plaintiff has failed to state a claim for express or implied warranty, he has failed to state a claim under the MMWA. *See Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 315 (S.D.N.Y. 2022) (dismissing MMWA claim because the plaintiff

had failed to state a breach of express or implied warranty for failing to adequately allege notice).

Additionally, Plaintiff has not alleged that there was a written warranty under the MMWA.  The MMWA defines a written warranty, in relevant part, as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time."  15 U.S.C. § 2301 (West).  However, "[t]he references on the packaging to 'honey' and 'graham' do not suggest that the crackers are defect free or that they will meet a specified level of performance over a specified period of time; instead, they simply describe the product."  *Campbell*, 516 F. Supp. 3d at 393 (collecting cases).  Accordingly, Plaintiff's MMWA claim is dismissed.[9]

### B.  The Fraud Claim

Defendant moves to dismiss the fraud claim for failure to allege facts showing that Defendant acted with scienter or fraudulent intent.  Dkt. No. 16 at 23.  To state a claim for fraud under New York law, a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which

---

[9] The Court notes, without deciding, that Defendant's argument that this Court does not have jurisdiction under the MMWA is likely without merit because the Class Action Fairness Act can be read to provide an alternative basis for jurisdiction.  *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 293 (S.D.N.Y. 2015) (collecting cases) ("Courts have disagreed about the answer to that question—namely, about whether the MMWA's specific jurisdictional limitations trump [Class Action Fairness Act's] authorization of federal jurisdiction over otherwise qualifying class actions—but the vast majority of courts have held that, where its conditions are met, Class Action Fairness Act provides an alternative basis for jurisdiction without regard for the MMWA.").

caused injury to the plaintiff.  *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing

*Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)).  Claims for fraud

must also satisfy the heightened pleading requirements of Rule 9(b) and be pleaded "with

particularity."  *See B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481

(S.D.N.Y. 2010).  Rule 9(b) requires a plaintiff to "allege facts that give rise to a strong inference

of fraudulent intent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal

quotation marks and citation omitted).  Plaintiff may raise this inference "either (a) by alleging

facts to show that defendants had both motive and opportunity to commit fraud, or (b) by

alleging facts that constitute strong circumstantial evidence of conscious misbehavior or

recklessness."  *Id.* at 290–91.  "The simple knowledge that a statement is false is not sufficient to

establish fraudulent intent, nor is a defendant's 'generalized motive to satisfy consumers' desires

[or] increase sales and profits.'"  *Davis v. Hain Celestial Grp.*, 297 F. Supp. 3d 327, 337

(E.D.N.Y. 2018) (quoting *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at

*25); *see Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116, 138–39 (S.D.N.Y. 2022) (finding

plaintiff had not adequately alleged scienter under Rule 9(b) for a common law fraud claim

where complaint merely claimed that defendant knew its representations were false); *Budhani*,

527 F. Supp. 3d at 687 (dismissing fraud claim where allegations addressing fraudulent intent

was limited to allegation that defendant failed to accurately identify the product on its label and it

knew this was untrue).  Plaintiff fails to evince a strong inference of fraudulent intent and thus

the fraud claim is dismissed.  *See Kelly v. Beliv LLC*, 2022 WL 16836985, at *10 (S.D.N.Y.

Nov. 9, 2022).

### C.     The Unjust Enrichment Claim

Defendant moves to dismiss the unjust enrichment claim as duplicative.  Dkt. No. 16 at

24.  "Under New York law, a plaintiff may prevail on a claim for unjust enrichment by

demonstrating '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)).  "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (internal quotation marks and citation omitted).  Accordingly, district courts in this Circuit dismiss unjust enrichment claims that "simply duplicate[], or replace[], a conventional contract or tort claim." *Ebin v. Kangadis Food, Inc.*, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013); *see Price v. L'Oreal USA, Inc.*, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) ("All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants . . . .  Accordingly, Plaintiff's New York unjust enrichment claim is dismissed as duplicative."); *Bowring v. Sapporo U.S.A. Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) ("Plaintiff's unjust enrichment claim relies on the same facts as her other causes of action in tort.  Because this claim is duplicative, it is dismissed."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) ("Buonasera is alleging tort causes of action and is relying on the same set of facts for these causes of action as he is for the unjust enrichment claim.  Because Buonasera fails to show how the unjust enrichment claim is not duplicative, it should be dismissed.").

Plaintiff's unjust enrichment claim is based on the same facts and theories as his statutory claims under GBL §§ 349, 350, his fraud claim, and his breach of warranty claim.  Accordingly it is dismissed.  *See Kelly*, 2022 WL 16836985, at *11; *Valcarcel*, 577 F. Supp. 3d at 282; *Budhani*, 527 F. Supp. 3d at 688.

**IV.**     **The Motion to Dismiss the Putative Multi-State Claims**

Plaintiff also brings claims as a putative class action on behalf of a "Consumer Fraud Multi-State Class," defined as "[a]ll persons in the States of Alaska, Maine, Utah and Georgia who purchased the Product during the statutes of limitations for each cause of action alleged." Dkt. No. 1 ¶ 94; *see also id.* ¶¶ 105–08.  Defendant argues that those claims should be dismissed because Plaintiff does not allege he purchased the Product in any of those states.  Dkt. No. 16 at 24.  Defendant also argues that, if the claims fail under the GBL, they must also fail under the laws of those states, and that Plaintiff has failed to satisfy certain procedural requirements under the laws of each of Alaska, Georgia, Maine, and Utah.  *Id.* at 24–25.  Plaintiff does not dispute that he did not reside, or purchase the Product, in any of the states defined to be within the Multi-State Class, and thus cannot assert a personal claim under those laws, nor that he has failed to satisfy the statutory requirements of those States.  Dkt. No. 18 at 9.  Thus, to the extent that he purports to bring claims under the laws of Alaska, Maine, Utah, and Georgia on his own behalf, that claim is dismissed.[10]  *See Miramontes*, 2023 WL 3293424, at *7–8 (holding that the plaintiff could not bring a claim under consumer fraud statutes of states where he did not purchase a product because "[t]he state consumer protection laws invoked by Plaintiff, like those of New York . . . , are presumed to be territorial in nature").

---

[10] Plaintiff argues that he can bring claims on behalf of others under the laws of Alaska, Maine, Utah, and Georgia even if he does not have a claim himself.  Dkt. No. 18 at 9.  Defendant responds that it did not raise a class-standing argument in its motion.  Dkt. No. 19 at 9 n.7.  Therefore, the Court need not reach the issue at this stage.

## CONCLUSION

Defendant's motion to dismiss the Complaint is GRANTED IN PART and DENIED IN PART. The Clerk of Court is respectfully directed to close Dkt. No. 15.


SO ORDERED.

Dated: September 28, 2023
      New York, New York
                                                      LEWIS J. LIMAN
                                       United States District Judge